**L. Mabel EVANS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 64–290.

United States District Court
D. Oregon.

March 7, 1966.

Robert Briggs and Gerald Meindl, Portland, Or., for plaintiff.

Sidney I. Lezak, U. S. Atty., and Donal D. Sullivan, Asst. U. S. Atty., Portland, Or., for defendant.

EAST, District Judge.

Plaintiff L. Mabel Evans (Evans) seeks to recover from the defendant United States of America (Government) a refund of income taxes paid for the calendar year 1962 in the amount of $47.66.

## FACTS

The parties have agreed in the pretrial order (omitting jurisdictional facts) upon the following facts:

On February 19, 1963, Evans filed her individual income tax return for the calendar year 1962. The adjusted gross income for Evans was the sum of $2,367.-65. Evans reported tax due for 1962 in the amount of $47.66 and paid said sum at the time of filing her return February 19, 1963;

On or about April 3, 1963, Evans filed with A. G. Erickson (District Collector) at his office in Portland, Oregon, her claim for refund, Form 843, asking a refund for the year 1962 in the amount of $47.66, claiming a special deduction under Internal Revenue Code § 216 a proportionate (of her share) amount for (real estate) taxes and (mortgage loan) interest paid by Terwilliger Plaza, Inc. (Plaza);

On April 20, 1964, the District Collector notified Evans that her claim was disallowed;

Plaza is an Oregon non-profit corporation, and the Commissioner of Internal Revenue in the year 1963 determined its status as an exempt corporation under Internal Revenue Code § 501. Plaza has 342 apartments, which are occupied by its members under written agreements which grant to said members a lifetime lease. Each member has a vote in the affairs of the corporation and in the election of the Board of Trustees, who conduct the affairs of the corporation;

Funds for construction of Plaza were insured under the Federal Housing Act

and during the year in question Plaza paid the sum of $183,568.20 in interest on its mortgage. In addition, in the same year 1962, Plaza paid property taxes to Multnomah County, Oregon, in the amount of $3,220.06;

The right to occupy an apartment in Plaza is restricted to those who are members;

No member receives any compensation, nor has he any rights to distribution of assets upon liquidation; and

In the year 1962 more than 80% of the gross income of Plaza was derived from members.

## CONTENTIONS OF PARTIES

Evans contends that by virtue of her agreement with Plaza and her status as a member of that corporation, that she has a proprietary interest, as that term is used in the Regulations and Opinions of the Commissioner of Internal Revenue in Internal Revenue Code § 216; and

That as such she is entitled to a deduction under Internal Revenue Code § 216 for her pro rata share of taxes and interest paid by Plaza, in the sum of $479.09, and to a refund of the 1962 income taxes paid thereon, in the amount of $47.66.

Government contends that Evans does not have a proprietary interest in the properties of Plaza as the term is used in the Internal Revenue Code and is not entitled to the deduction claimed.

## ISSUE OF LAW

The parties agree in the pretrial order that there is no issue of fact to be decided by the court and that there is a single issue of law involved, *viz.*:

1. Whether or not Evans is entitled to a special deduction for her pro rata share of the taxes and interest paid by Plaza in accordance with the provisions of § 216 Internal Revenue Code, and the Regulations and Opinions of the Commissioner of Internal Revenue relative thereto.

The parties have submitted that issue of law to the court upon the agreed facts in the pretrial order and the documentary evidence received in evidence on behalf of Evans, as supported by the written memorandum of counsel for each party.

## LAW OF THE CASE

Section 216, supra, provides, *inter alia:*

"(a) *Allowance of deduction.*—In the case of a tenant-stockholder (as defined in subsection (b) (2)), there shall be allowed as a deduction amounts (not otherwise deductible) paid or accrued to a cooperative housing corporation within the taxable year, but only to the extent that such amounts represent the tenant-stockholder's proportionate share of—

(1) the real estate taxes allowable as a deduction to the corporation under section 164 which are paid or incurred by the corporation on the houses or apartment building and on the land on which such houses (or building) are situated, or

(2) the interest allowable as a deduction to the corporation under section 163 which is paid or incurred by the corporation on its indebtedness contracted—

\*     \*     \*     \*     \*

"(b) *Definitions.* For purposes of this section—

(1) *Cooperative housing corporation.*—The term 'cooperative housing corporation' means a corporation—

(A) having one and only one class of stock outstanding,

(B) each of the stockholders of which is entitled, solely by reason of his ownership of stock in the corporation, to occupy for dwelling purposes a house, or an apartment in a building, owned or leased by such corporation,

(C) no stockholder of which is entitled (either conditionally or unconditionally) to receive any distribution not out of earnings and profits of the corporation ex-

cept on a complete or partial liquidation of the corporation, and

(D) 80 percent or more of the gross income of which for the taxable year in which the taxes and interest described in subsection (a) are paid or incurred is derived from tenant-stockholders.

(2) *Tenant-stockholder.*—The term 'tenant-stockholder' means an individual who is a stockholder in a cooperative housing corporation, and whose stock is fully paid-up in an amount not less than an amount shown to the satisfaction of the Secretary or his delegate as bearing a reasonable relationship to the portion of the value of the corporation's equity in the houses or apartment building and the land on which situated which is attributable to the house or apartment which such individual is entitled to occupy."

Internal Revenue Ruling 55–316, 1955–1 Cum.Bull. 312 provides, so far as we are concerned, that a "non-stock cooperative apartment corporation"[1] qualifies under § 216(b) (1) where the tenants possess (p. 341):

" * * * the normal and usual rights of stockholders, namely, a pro rata distribution of assets upon liquidation, participation in management by reason of electing the board of directors, and transferability of their interest. Furthermore, a nonstock cooperative apartment corporation which otherwise qualifies is in accord with the purpose of section 23(z) of the 1939 Code. The purpose of section 23(z) is to place the cooperative apartment owner in as favorable a position with respect to interest and taxes paid as the owner of a dwelling house. * * * Perpetual use of and equity in an apartment or the proprietary lease of an apartment, coupled with membership in the corporation, is the equivalent for practical purposes of ownership of an apartment."

### STATUS OF PLAZA

Government does not seriously contend that Plaza is not a "cooperative housing corporation" within the definition in § 216(b) (1), supra, but suggests that the requirement

"(C) [*supra*] no stockholder of which is entitled (either conditionally or unconditionally) to receive any distribution not out of earnings and profits of the corporation except on a complete or partial liquidation of the corporation, * * *."

is not satisfied in that Evans, under her lease contract, is not entitled to receive distributions of earnings of profits nor assets upon liquidation.[2]

I interpret the subsection (C) to be a restriction and not a requirement. So, without further ado, I conclude that Plaza is a "cooperative housing corporation" within the definition of § 216(b) (1), supra.

### STATUS OF EVANS

In determining whether Evans is a "Tenant-stockholder" as defined, we must consider not only subsection (2), Tenant-stockholder, supra, but also subsection (1) (B), which refers to "stockholders."

Plaza is a nonstock corporation; therefore, in the strict legal sense, Evans is not and cannot be a "stockholder" of Plaza, and I glean from the Government's brief that it makes some point of that fact in disqualifying Evans as a Tenant-stockholder, yet the very Revenue Ruling which the Government seeks to impose upon Evans speaks of "a nonstock cooperative apartment corporation."

---

1. Goverment's Brief, p. 6.

2. Article III, as amended, of the Articles of Incorporation of Plaza, provides "in the event of termination of the existence of the corporation, all capital and surplus of the corporation, if any, shall be assigned and delivered to the Common School Fund of the State of Oregon."

Evans' Exhibit No. 3 (Agreement Covering Residence at Terwilliger Plaza, Inc.) provides, *inter alia:*

"3. The Member [Evans] agrees to pay as a membership fee to the Plaza, the sum of $2,000.00, receipt of which is hereby acknowledged by the Plaza.

\*       \*       \*       \*       \*

"8. Plaza agrees to reserve for the use of the Member [Evans] a living unit in the Plaza, the Member to have the priority of selection of said living unit in accordance with the order of receipt of application, and shall have the privilege of occupying said living unit from the time it is completed throughout his or her lifetime, but this privilege shall not inure to the use or benefit of the heirs, assigns or representatives of the Member, and this lifetime use shall be subject to the Member's paying the maintenance fee established by the Plaza, and to the Member's abiding by the terms of this agreement and the rules and regulations adopted by the Plaza."

Evans' Exhibit 1(a) (Articles of Incorporation of Terwilliger Plaza, Inc.) reads in part:

## ARTICLE II.

"This corporation shall not engage in any form of trade or commerce, or carry on any activity which will result in a remunerative profit to the corporation or to its members. Subject to the foregoing limitations, the object, business, or pursuit of this corporation shall be as follows:

(a) To provide elderly persons on a nonprofit basis, with housing

3. Article IV, subsection (3) of Plaza's Articles of Incorporation provide:
"The successors to the corporators, or the board of trustees, or directors, officers or such other governing body will be elected annually by the membership on the second Monday in January. The officers, including the original incorporators, shall serve without compensation."

facilities and services, specially designed to meet the physical, social and psychological needs of the aged, and contribute to their health, security, happiness and usefulness in longer living.

\*       \*       \*       \*       \*

## ARTICLE IV.

"(2) All fully paid members [Evans] will be eligible to vote at the annual meeting, and the board of trustees will be the governing body which will exercise the powers of the corporation."

Evans' Exhibit 2 (By-Laws of Terwilliger Plaza, Inc.), provides in Article III, Section 2, that:

"The membership of the corporation shall consist of the incorporators and such other natural persons that have been approved for membership by the Board of Trustees, or by the executive committee acting on behalf of the Board of Trustees."

As stated above, Plaza is a nonstock corporation and has no legal-title stockholders as such, but only its member-residents who hold a life lease for their unit and constitute the body and soul of the corporation and, through representation,[3] operate and manage Plaza's affairs.

▮ Government insists that Evans does not qualify as a "Tenant-stockholder" because her life lease with Plaza does not equate her right of occupancy of a unit in Plaza to that of an "owner of a dwelling House" in that, in the language of Revenue Ruling 55–316, supra, she has neither:

1. a perpetual use of, nor

2. a proprietary lease [4] to her unit in Plaza.

4. The phrase "proprietary lease" is a legal anomaly. "Proprietary" means exactly what the Government contends—ownership. A lease gives right of possession as against ownership. A lease by its very essence acknowledges ownership elsewhere.

It seems that Revenue Ruling 55–316, supra, is premised upon the Government's interpretation of the intent of Congress in enacting § 23(z) of the Internal Revenue Code of 1939, reenacted as § 216, supra. The Committee Report on the Revenue Act of 1942 states in part that:

"The bill provides for a new deduction in section 23(a) of taxes and interest paid or accrued by a tenant stockholder to a cooperative apartment corporation within the taxable year. * * * The general purpose of this provision is to place the tenant stockholders of a cooperative apartment in the same position as the owner of the dwelling house so far as deductions for interest and taxes are concerned."

(S.Rep. No. 1631, 77th Cong., 2d Sess., p. 51 (1942–2 Cum.Bull. 504–546.))

If the Committee Report is an expression of the intent of Congress, I read it differently than does the Government. It plainly states that the general purpose of the legislation is to place one class of persons "in the same position" as another. It gives one the status for income tax purposes of another. Nowhere in the Committee Report excerpt is there any expression of Congressional intent that a Tenant-stockholder, to be eligible for the deduction, must be an owner, or equated to an owner, of a dwelling house by holding some type of a surviving title or right to a unit in the cooperative.

█ Owners of dwelling houses may deduct amounts paid for real estate taxes and interest for income tax purposes. It is clear that Congress wished to give the tenant-stockholder residents who actually pay the real estate taxes and interest due from their cooperative housing entity the same right of deduction by placing those tenant-stockholders "in the same position as the owner of a dwelling house."

█ Furthermore, subsection "(2) Tenant-stockholders," supra, speaks in terms of occupancy rather than ownership. This subsection, in any fair interpretation of its wording, nowhere requires a "Tenant-stockholder" to own some type of an alienable right or title to his unit in the cooperative housing entity. The subsection requires only that the tenant-stockholders be " * * * a stockholder in a cooperative housing corporation, and whose stock is fully paid-up * * *." I have above determined that Evans, as a member-resident of Plaza, is a "stockholder" within the meaning of that term as used in § 216, supra, and she has otherwise met the prerequisites of having her "stock" [membership] "fully paid-up."

█ When Internal Revenue Rulings and Regulations place additional requirements to or arbitrarily and unreasonably interpret and restrict an Act of Congress they cannot prevail. United States v. Portland General Electric Co., 310 F.2d 877 (9th Cir. 1962). I hold that part of Revenue Ruling 216, supra, which requires a member-tenant of a cooperative housing corporation to own the perpetual use of or a proprietary lease of his unit before qualifying as a "Tenant-stockholder" under § 216, supra, goes beyond the requirements of subsection (2) Tenant-stockholder, supra, and to be arbitrary and unreasonable and to have no force and effect as against Evans. As Chief Judge Chambers once wrote, the Government, too, must "turn square corners."

## CONCLUSIONS

I conclude that Evans is a "tenant-stockholder" within the meaning of that term as used in § 216, supra, and is entitled to the claimed deduction.

The parties have agreed in ¶ XI of the pretrial order that in the event that this court should find that Evans is entitled to the deduction claimed, that the amount of the real estate tax and interest deductions available to her is in the sum of $479.09.

I find from the record that, with the allowance of a deduction for that amount, Evans overpaid income tax in the amount of $47.66. Accordingly, I conclude that

Evans is entitled to a refund of tax of $47.66.

This opinion shall stand as this court's findings of fact and conclusions of law in the above-entitled cause, as provided by Rule 52(a) F.R.Civ.P. Either party may submit additional findings of fact within ten days from the date hereof.

Counsel for Evans may submit appropriate judgment.